[No. 10152.   Department Two.   July 8, 1912.]

THE STATE OF WASHINGTON, *Appellant*, v. OSCAR COLLINS, *Respondent*.[1]

ELECTIONS—OFFENSES—FRAUDULENT REGISTRATION—FALSE OATH—
LOSS OF "CIVIL RIGHTS." The registration oath, required by Rem.
& Bal. Code, § 4768, that the elector had not lost his civil rights by
having been convicted of an infamous crime, is not shown to be
false by an allegation in an information for false swearing that
the accused had taken the oath after conviction of a felony, where,
by such conviction, he had lost no civil rights, but only the right
to vote, which is a political and not a civil right.

SAME—STATUTES CONSTRUED. Const., art. 6, § 3, providing that
persons convicted of infamous crimes shall be excluded from the
elective franchise unless restored to their civil rights, cannot be
taken as a construction of the existing territorial statute (Rem. &
Bal. Code, § 4755), to mean that such persons lost their civil rights,
when the act only forfeited their right to vote, a political and not
a civil right.

SAME—INFAMOUS CHARGE—JAIL BREAKING. An information for
falsely swearing, in a registration oath made pursuant to Rem.
& Bal. Code, § 4768, that the accused had not lost his civil rights,
by being convicted of an infamous crime, is insufficient where it
merely alleges that the accused had been convicted of the in-
famous crime of jail breaking in another state without showing
that at the time of his escape he was held on an infamous charge;
since by Rem. & Bal. Code, § 2342, jail breaking is a felony only
where the prisoner was held on a felony charge, and a misde-
meanor if held otherwise.

STATUTES—CONFLICT OF LAWS—EXTRATERRITORIAL FORCE OF FOR-
EIGN LAWS. Where, under the law of this state, jail breaking was
only a misdemeanor at the time the offense was committed in
another state, the offense would not be an infamous crime, within
the meaning of Rem. & Bal. Code, § 4768, denying the elective fran-
chise to certain citizens, even if jail breaking were a felony in
such other state; since the laws of such state could not be given
extraterritorial force in opposition to the laws of this state.

STATUTES—FOREIGN LAWS—PLEADING AND PROOF. The laws of
another state must be pleaded and proved.

[1]Reported in 124 Pac. 903.

Appeal from a judgment of the superior court for King county, Gay, J., entered December 23, 1911, dismissing a prosecution for fraudulent registration, upon sustaining a demurrer to the information. Affirmed.

*John F. Murphy, Hugh M. Caldwell,* and *H. B. Butler,* for appellant.

*Gill, Hoyt & Frye,* for respondent.

ELLIS, J.—Appeal from an order sustaining a demurrer to an information charging the defendant with the offense of fraudulent registration.

The information charged that the defendant in making the oath provided by law for the registration of voters, did

". . . in such oath or affirmation wilfully, falsely, feloniously and contrary to his oath, swear or affirm that he had not lost his civil rights by being convicted of an infamous crime.

"Whereas said Oscar Collins had, as he then and there well knew, theretofore been convicted in the circuit court of the state of Missouri, at the term of said court being then and there held in the month of November, A. D. 1889, in Jackson county, in said state of Missouri, of the infamous crime of breaking jail before conviction, and been sentenced by said court to serve a term of two years from November 18, 1889, in the Missouri state penitentiary, and had on the 26th day of November, 1889, entered said penitentiary and had thereafter served his said term in the said penitentiary, under the law of the state of Missouri, providing that:

" 'If any person lawfully imprisoned or detained in any county jail or other place of imprisonment, or in the custody of any officer, upon any criminal charge, before conviction, for the violation of any penal statute, shall break such prison or custody and escape therefrom, he shall, upon conviction, be punished by imprisonment in the penitentiary for a term not exceeding two years, or in a county jail not less than six months,' each and all of which facts as aforesaid were well known to said Oscar Collins when he falsely and fraudulently registered in King county, state of Washington, on the 7th

day of January, 1911, for the purpose of voting as hereinbefore charged."

The defendant demurred upon the grounds: "First, that the facts in said information set forth do not constitute a crime; second, that said information does not substantially conform to the Code of Washington." From an order sustaining the demurrer, the state has appealed.

The registration statute, Rem. & Bal. Code, § 4768, prescribed a form of oath or affirmation as follows:

"I, ————, do solemnly swear or affirm that I am a male person over twenty years, eleven months and ten days of age, that I am a native born or naturalized citizen of the United States, or was a legal elector of the territory of Washington at the time of the adoption of the constitution of the state of Washington; that I have been an actual permanent resident of the state of Washington for eleven months and ten days last past, of the county of ———— for seventy days last past and of the ———— precinct ten days last past, and I have not lost my civil rights by being convicted of an infamous crime; that I was either a qualified elector on the first day of July, 1901, or that I can read and speak the English language."

The state constitution, art. 6, § 3, reads:

"All idiots, insane persons, and persons convicted of infamous crime unless restored to their civil rights, are excluded from the elective franchise."

The territorial law of 1866 (Rem. & Bal. Code, § 4755), which was in force when the constitution was adopted, provides that, "No idiot, or insane person, or persons convicted of an infamous crime, shall be entitled to the privilege of an elector."

It will be noted that the provision of the constitution above quoted is practically the same as this statute with the exception of the inserted words, "unless restored to their civil rights." From that circumstance, it is argued that the constitution makers had in mind the prior statute, and construed it as meaning that, by the conviction, such persons lost their

civil rights. But the only right declared forfeited by either the statutory or constitutional provision is the right to exercise the elective franchise. This is not a civil right, but a political right. Bouvier's Law Dictionary, vol. 2, p. 929, defines civil and political rights as follows:

"*Civil rights* are those which have no relation to the establishment, support, or management of the government. These consist in the power of acquiring and enjoying property, of exercising the paternal and marital powers, and the like."

"*Political rights* consist in the power to participate, directly or indirectly, in the establishment or management of government. These political rights are fixed by the constitution. Every citizen has the right of voting for public officers, and of being elected; these are the political rights which the humblest citizen possesses."

It would seem that the forfeiture of civil rights generally could hardly be based upon an implication which can arise only by assuming a misconception by the framers of the constitution of the nature of the right declared forfeited by the prior statute. That right is a political right, and was obviously the only right had in mind by the makers of the constitution. Unless we judicially amend the constitution and also the form of oath prescribed in the registration law, by substituting "political rights" for "civil rights," it seems plain that the information does not charge false swearing, since the defendant had lost no civil rights by the conviction set out in the information.

But counsel for the state argues, in substance, that art. 6, § 3 of the constitution, in order to give effect to all of its terms, must be construed as defining the right to vote as a civil right. We find it unnecessary to pass upon this contention, since, even assuming that the right of franchise may be held to be defined by the constitution as a civil right regardless of the accepted definition of that term, still the information is fatally defective.

Section 2342 of Rem. & Bal. Code, which was enacted in 1909, reads:

"Every prisoner confined in a prison, or being in the lawful custody of an officer or other person, who shall escape or attempt to escape from such prison or custody, by force or fraud, if he is held on a charge, conviction or sentence of a felony, shall be guilty of a felony; if held on a charge, conviction or sentence of a gross misdemeanor or misdemeanor, he shall be guilty of a misdemeanor."

Under this section, it is plain that the escape or attempted escape, in order to constitute a felony, must be by a prisoner charged with a felony, otherwise it is merely a misdemeanor. The information is silent as to the nature of the offense with which the defendant was charged when he broke the Missouri jail. It does not state whether he was then charged with a felony or a misdemeanor under the laws either of that state or of this. It is clear that the information thus failed to state facts which under the present law of this state would necessarily constitute an infamous crime. Moreover, prior to the enactment in 1909 of § 2342, above quoted, the breaking of jail and escape therefrom by a prisoner, regardless of the nature of the charge upon which he was imprisoned, was only a misdemeanor. Code of 1881, § 884. So that, under the law of this state, as it existed when the defendant was convicted in Missouri, as alleged in the information, the offense for which he was convicted was recognized only as a misdemeanor. In order, therefore, to sustain this information, we are driven to the unreasonable position that the defendant, at the time alleged in the information, might have broken jail in this state without loss of his right to vote, but having broken jail in Missouri and lost his right to vote there (assuming that he did lose this right) he therefore lost his right to vote on subsequently becoming a resident of this state. In other words, the same offense committed in this state, being here a misdemeanor not forfeiting the right of franchise, if committed in a state where it is a felony would forfeit the right of franchise here. We have been cited to no authority according such an extraterritorial effect to a foreign law in order to sustain a criminal charge under a do-

mestic statute. While we do not hold that the forfeiture of the elective franchise declared by the constitution applies only to persons convicted of an infamous crime within this state, we do hold that persons who come into this state and become citizens thereof are subject to the same criminal laws as are other citizens.

Again, in order to sustain this information we must also make the assumption that, under the Missouri law, the appellant by the conviction pleaded had lost his right to vote in that state, though no statute of that state to that effect is pleaded in the information. It is elementary that, even in civil cases where a foreign law is an essenial element to the cause of action or defense it must be pleaded and proved like any other fact. 9 Ency. Plead. & Prac., p. 542.

The demurrer was properly sustained. The judgment is affirmed.

MORRIS and MOUNT, JJ., concur.

FULLERTON, J., concurs in the result.